# IN THE COURT OF APPEALS OF IOWA

No. 14-0369
Filed April 30, 2014

**IN THE INTEREST OF Z.B.,**
**Minor Child,**

**J.B., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother appeals the order terminating her parental rights. **AFFIRMED.**

Emily K. Tisinger of Springer & Laughlin Law Offices, P.C., Des Moines for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Andrea S. Vitzthum, Assistant County Attorney, for appellee State.

Karl Wolle of the Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**DOYLE, J.**

A mother appeals from the juvenile court's order terminating her parental rights to her eleven-month-old child.[1]  We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in August 2013 following the hospitalization of the mother and father due to intravenous drug use.[2]  The child, then five months old, was removed the parents' care and placed in foster care.[3]  The mother's drug screen tested positive for cannabis, oxycodone, benzodiazepines, and opiates.  The mother admitted she had been using drugs "about every day" for "about four months" prior to the child's removal.  The mother completed a substance abuse evaluation, which recommended she attend intensive outpatient drug treatment while on the waiting list for halfway house residential programming through the House of Mercy.  The mother did not participate in the recommended drug treatment.

The child was adjudicated in need of assistance in September 2013.  At that time, DHS presented the mother with a Contract of Expectations, setting forth specific action expected of the mother, including that she would participate in substance abuse treatment, maintain sobriety, submit to random UA's, participate in offered visitation with the child, be responsible for scheduling and

---

[1] The father has not appealed the termination of his parental rights to the child.
[2] The mother overdosed on morphine injection and had a staph infection at the injection site on her arm.  The mother stated she used morphine only when she "couldn't get other drugs," due to her belief that she was allergic to morphine.
[3] The child has remained in the same family foster care placement since removal.  That family has expressed its willingness and ability to adopt the child.

maintaining medical and other appointments for the child, participate in parenting classes, obtain a mental health evaluation, maintain stable and safe living arrangements, and maintain employment. The Contract of Expectations was signed by the mother and her DHS caseworker.

In October 2013, the mother missed an appointment with her probation officer.[4] She admitted to her probation officer that she had continued abusing drugs. The mother was charged with a probation violation and was placed in custody. She spent ninety-five days at the Polk County Jail, and was then transferred to a women's residential facility in Des Moines, where she had resided for two weeks as of the time of the termination hearing.

The State filed a petition to terminate parental rights in January 2013. The termination hearing was held in February 2014. The juvenile court observed the mother was twenty-one years old and had a significant history of drug abuse, beginning when she was thirteen years old. The mother testified she last used drugs on the day of her arrest, and she had not successfully completed any sort of substance abuse treatment program. The mother had just begun substance abuse treatment at the women's residential facility two weeks prior. The mother stated she had also briefly attempted treatment at the House of Mercy right after the child was removed, but that she stopped going and continued to use drugs.[5]

Prior to her probation violation the mother had been living with her mother who used methamphetamine and gave her money to obtain drugs. The mother

---

[4] The mother was on probation stemming from a prior conviction for third-degree burglary.

[5] The mother's prior attempt at drug treatment (namely, court-ordered drug treatment as a condition of her probation in March 2011) ended when the mother quit attending because she "felt like she had better things to do at the time."

had also lived with a boyfriend who was on probation for an OWI and sometimes drank to excess. The mother's only employment during these proceedings—Dunkin Donuts for two and one-half months—ended when she was fired for theft.[6] She had not completed a mental health evaluation. She had not consistently participated in visits with the child.

The mother agreed the child could not be returned to her custody at the time of the termination hearing, but stated she was "really trying to change [her] life." The mother also admitted she had not been able to stay clean and sober for a significant period in her life since the age of thirteen, and that the prospect of confinement in jail due to a probation violation was not sufficient motivation for her to stay sober in the past. The juvenile court denied the mother's request for a six-month extension.

Following the termination hearing, the juvenile court entered its order terminating the mother's parental rights pursuant to Iowa Code sections 232.116(1)(d), (i), and (*l*) (2013). The mother appeals.

## II. *Scope and Standard of Review*

We review proceedings to terminate parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them. *Id.* We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is

---

[6] The mother testified she had a history of thefts.

clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

### III. Discussion

#### A. Grounds for Termination

We must first determine whether a ground for termination under section 232.116(1) is established. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). The mother disputes the grounds to terminate her parental rights under each ground found by the juvenile court. "We only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm its ruling," *see In re R.K.*, 649 N.W.2d 18, 19 (Iowa Ct. App. 2000), and we elect to address the mother's contention that statutory grounds under section 232.116(1)(d) have not been proved by clear and convincing evidence.[7]

Under that section, termination may be ordered when a child has been adjudicated in need of assistance for physical or sexual abuse or neglect and the circumstances continue despite receipt of services. *See* Iowa Code § 232.116(1)(d). The mother did not contest the removal of the child from her care in August 2013 following her hospitalization for intravenous drug use. The mother later testified she was abusing drugs at the time she became pregnant with the child, for a time during the pregnancy, and nearly every day in the four months preceding the child's removal. The child was five months old at the time of removal. The mother agreed she placed herself and others at risk because of

---

[7] The State's petition alleged the child's adjudication pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n). The adjudication was not contested. "[A] CINA determination under section 232.2(6)(b) may lead to termination of parental rights under section 232.116(1)(d) . . . ." *In re J.S.*, No. 13-1606, ___ N.W.2d ___, ___ (Iowa 2014).

her drug use. We agree with the juvenile court's astute conclusion that "[t]his serious, unfettered abuse of hard drugs while caring for an infant is certainly the kind of neglect that places the child in imminent danger." To us, the mother's focus on the fact that she kept her needles for intravenous drug use locked up and away from the child emphasizes the mother's complete disregard, or at the very least, startling lack of understanding concerning her infant child's safety and well-being.

The mother claims there has been a "substantial change in [her] attitude, her persistence to engage in all resources available to her and work toward reunification with her child." At the termination hearing, however, the mother testified she had not yet completed drug treatment despite her understanding that such treatment was a critical component to become reunited with the child. In this case, the mother's actions and inactions speak louder than her words: she continued to use drugs after the child's removal and after she signed the Contract of Expectations; she lived with her mother who provided her money to buy drugs; and she has been in custody or residential placement since the very day she last used drugs. This is not even to mention the unaddressed concerns regarding the mother's mental health. Clearly, the circumstances leading to the initial adjudication have not been rectified despite the receipt of services. Under these facts and circumstances, we conclude there is clear and convincing evidence that grounds for termination exist under section 232.116(1)(d).

B.    *Factors in Termination*

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2).

*P.L.*, 778 N.W.2d at 37. In determining the best interests, this court's primary considerations are "the child's safety, the best placement for furthering the long-term nurturing and growth of the child, and the physical, mental, and emotional condition and needs of the child." *Id.*

The mother contends termination of her parental rights is not in the best interests of the child. The mother's best-interests claim essentially focuses on the juvenile court's failure to grant her a six-month extension.[8] As the mother claims, "Allowing [her] to have an additional six months to complete the services she had engaged in would not have been detrimental to the child."

We agree with the juvenile court's finding that termination of the mother's parental rights is in the best interests of the child and would best provide for the child's long-term nurturing and growth. Nothing in the record suggests additional time and services would correct the circumstances leading to the child's adjudication and removal. As the juvenile court observed:

> In this case, neither [the mother nor the father] is able to care for [the child] in either of their homes at this time. It is unlikely that [the child] can be safely returned to [the mother or father] in the foreseeable future. To return the child to her mother or father at this time or in the foreseeable future would subject her to great instability and uncertainty inflicted by her parents. There has not been any resolution to the concerns raised at the time of the child's removal. A parent's past behavior is an important factor in determining what the future holds for a child if returned to the parent's care and custody. . . .
> 
>       . . . .
> 
> The parents each argue for a six month extension under Iowa Code section 232.104(2)(b). Neither parent, however, is able to state when he or she will be released from custody, or where each would go once released from custody. Neither parent is employed. . . . [The mother] has yet to address her mental health

---

[8] The mother also raises this claim in section V of her brief, but we will not address that claim separately in light of our discussion on this issue here.

issues, and has just now begun outpatient and relapse classes as part of her halfway house program. It is impossible for the Court to enumerate specific factors, conditions, or expected behavior changes which would comprise the basis for a determination that the need for removal of the child will no longer exist at the end of an additional six-month period. Therefore, termination is in the best interests of this child.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41; *see In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting the parent's past conduct is instructive in determining his future behavior). Here, the mother is unable to assume custody of the child now or at any time in the foreseeable future. Children are not equipped with pause buttons. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). There is no reason to delay the child the permanency she needs and deserves.

C.      *Factors Against Termination*

Finally, we give consideration to whether any exception or factor in section 232.116(3) applies to make termination unnecessary. The mother claims the juvenile court erred in terminating her parental rights due to her close bond with the child. Termination is not mandatory when clear and convincing evidence is found that termination would be detrimental to the child due to the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c).

We have discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save

the parent-child relationship. *In re D.S.*, 806 N.W.2d 458, 474-75 (Iowa Ct. App. 2011). Although the mother loves the child, there is no evidence the mother's relationship with the child is one that is so close it would be detrimental to the child if termination occurred. No exception or factor contained in section 232.116(3) applies to make termination of the mother's parental rights unnecessary in this case.

## IV. *Conclusion*

There is clear and convincing evidence that grounds for termination exist, termination of parental rights is in the child's best interests, nothing in the record suggests an additional six months would correct the circumstances leading to the child's adjudication and removal, and no consequential factor weighing against termination requires a different conclusion. Accordingly, we affirm termination of the mother's parental rights.

**AFFIRMED.**

Vogel, P.J., concurs; Mullins, J., concurs specially.

**MULLINS, J.** (specially concurring)

I concur that the ruling to terminate the mother's parental rights should be affirmed, but write separately as I believe it should be affirmed under section 232.116(1)(i) not under section 232.116(1)(d).